# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

JAN 29 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:20-SW-0112-KJN
A white and black iPhone bearing ID# )
357331096100118 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A-4

located in the ___EASTERN___ District of ___CALIFORNIA___, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) | Distribution of a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See Affidavit of Special Agent Karl Schmid in Support of Search Warrant

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Karl Schmid, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___01/29/2020___

_____
*Judge's signature*

City and state: Sacramento, California     Hon. Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF SPECIAL AGENT KARL SCHMID IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS

I, Special Agent Karl Schmid, United States Drug Enforcement Administration ("DEA"), being first duly sworn, hereby state as follows:

## SCOPE OF REQUESTED SEARCH WARRANTS

1. I write this affidavit in support of an application for a warrant to search five electronic devices further described in **Attachments A-1** through **A-5**. These searches would aim to identify electronically-stored data more specifically described in **Attachment B**. **Attachments A-1** through **A-5** and **Attachment B** are incorporated by reference.

2. The property to be searched consists of four cellular telephones ("the Devices"):

    a. A white LG cellular phone with silver case bearing S/N: 909VTQS0921644 and described in **Attachment A-1.**

    b. A gold and black iPhone bearing ID# 35726809687831 and described in **Attachment A-2.**

    c. A black iPhone bearing ID# 357332099908036 and case and described in **Attachment A-3.**

    d. A white and black iPhone bearing ID# 357331096100118 and described in **Attachment A-4.**

    e. A black iPhone Model# A1661 bearing IMEI# 355834089941259 and described in **Attachment A-5.**

3. The Devices are currently in the lawful possession of the Drug Enforcement Administration. Therefore, while the DEA might already have all necessary authority to examine them, I seek this additional warrant out of an abundance of caution. I want to be certain that an examination of the Devices will comply with the Fourth Amendment and other laws.

4. I am currently conducting an investigation related to the distribution of methamphetamine and also the possession of methamphetamine with the intent to distribute it. The investigation involves Shannon JEFFRIES, Juan MARTNINEZ CASTRO, and others. The facts and information set forth in this Affidavit are based upon my personal knowledge obtained during this investigation and other documents and records obtained as a result of this investigation. Because this Affidavit is submitted for the limited purpose of setting forth probable cause for the requested search warrant, I have not included each and every fact known to me concerning this investigation, but only what I believe are adequate facts to establish

probable cause that evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 will be found in the devices to be searched.

## AGENT BACKGROUND AND EXPERTISE

5. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA"). I have been a DEA Special Agent since July 2012. Prior to working for DEA, I was employed as a police officer for the City of Virginia Beach Police Department from 2005 to 2012. I am currently assigned to the DEA Sacramento District Office charged with investigating major drug trafficking organizations operating in the Eastern District of California.

6. As a DEA agent, I have assisted in the execution of search warrants on many occasions for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal drug statutes. I have participated in investigations targeting individuals and organizations trafficking cocaine, heroin, marijuana, and methamphetamine.

7. During the course of my career as a police officer and DEA Special Agent, I have participated in multiple drug investigations. Through my training, experience, and interaction with other experienced special agents, task force agents, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs; to collect and conceal drug related proceeds; and to communicate with other participants to accomplish such objectives. I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the DEA. In total, I have received over 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

8. During the course of these investigations, I have become familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their illegal operations. I have participated in at least five separate wire interception cases, encompassing at least eight telephones. I have previously written at least four wire interception affidavits. Furthermore, I have served as both a monitor and wire room supervisor on at least five federal wiretap investigations. Additionally, I have attended the California Department of Justice's eight-hour wire interception certification course, as set out in California Penal Code § 629.94.

9. Through my training, experience, and interaction with other experienced Special Agents, Task Force Agents, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, distribute drugs, to collect and conceal drug related proceeds, and to communicate with other participants to accomplish such objectives. These methods include the use of telephones, pre-paid or debit calling cards, public telephones, wireless communications technology such as paging devices and cellular telephones, counter-surveillance, elaborately planned smuggling schemes tied to legitimate

2

businesses, and use of codes in communications in an attempt to avoid detection by law enforcement. Based on my training and experience, I also know that violators of the controlled substances laws often purchase telephones or subscribe to telephone service using false names and/or other individuals' names to avoid detection by law enforcement.

10. In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (2) review and analysis of information received from various sources, including evidence provided pursuant to subpoenas and search warrants, such as GPS tracking data; (3) physical surveillance conducted by law enforcement officials reported to me either directly or indirectly; (4) a review of public records, telephone toll records, and subscriber information; (5) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement agencies; (6) a review of driver's license and automobile registration records; (7) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (8) my training and experience as a DEA agent and; (9) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

11. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

12. The facts and information set forth in this Affidavit are true based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me, my review of investigative reports, notes, transcripts, review of intercepted communications, and discussions with other federal, state and local law enforcement officials. Because this affidavit is submitted for the limited purpose of supporting a search warrant, I have not included the details of every aspect of the investigation. I have set forth only the facts that I believe are necessary to establish a foundation for the search of the properties identified.

## STATEMENT OF PROBABLE CAUSE

### *Background*

13. In July 2019, Tri-County Drug Enforcement Team ("TRIDENT"), working with the DEA, the Department of Homeland Security Investigations ("HSI"), and the Federal Bureau of Investigations ("FBI"), the "Investigating Agencies," received information that an organization

was actively selling large amounts of methamphetamine in the Central Valley of California. Subsequently, agents were able to identify 3420 28th Avenue, Sacramento, California as a residence being utilized as a methamphetamine distribution location.

### Controlled Purchases of Methamphetamine at 3420 28th Avenue, Sacramento, CA

14.  In October 2019, the Investigating Agencies conducted two controlled purchases of methamphetamine from Juan Carlos MARTINEZ Castro. The first was for approximately five pounds of methamphetamine and the second was for approximately 10 pounds of methamphetamine. These were conducted by a confidential source, discussed below in this affidavit. These controlled purchases were monitored and directed by the investigating agencies. Both the above mentioned controlled purchases occurred in 3420 28th Avenue, Sacramento, California.

### The Controlled Meeting Related to Methamphetamine on December 11, 2019.

15.  In the days preceding December 11, 2019, a TRIDENT agent, acting in an undercover capacity (UC), and a confidential source ("CS")[1] working at the direction of the Investigating Agencies, negotiated for the anticipated purchase of methamphetamine with a currently unknown male (UM), using a Mexico based telephone number. During these calls, the UC and CS coordinated with the UM the amount of methamphetamine to be purchased and the cost. During these calls, the CS was directed to a known location in Sacramento, CA where the CS had completed previous controlled purchases of methamphetamine, believed to be 3420 28th Avenue, Sacramento, California. During the communications with the CS the UM indicated that the CS would deal with a female if the CS went to complete the transaction during the day.

        a. The calls and in person communication conducted by the CS and described in this affidavit were done in Spanish and the information was relayed to me in summary by a Spanish speaking law enforcement agent.

16.  On December 11, 2019, the CS was again in contact with the UM using the Mexico based telephone number to continue coordination of the anticipated purchase of methamphetamine. During this communication, the UM provided the CS with telephone number 916-837-6821, as the number for the CS to contact in the Sacramento area, to coordinate further. The CS also called the UM to provide an estimated time the CS would arrive at the meeting location.

17.  On the same day, the CS met with agents at a neutral location and was provided a recording/transmitting device. Agents monitored the CS as she/he drove to the meeting location.

---

[1] The CS is working with TRIDENT for financial compensation. In the past, this CS has provided reliable information during other unrelated investigations. Much of the CS' information related to this investigation was corroborated by agents. I believe this CS and the CS' statements regarding this investigation to be reliable.

4

The CS contacted telephone number 916-837-6821 on the way to the meeting location and was advised by a female to pull up in front and park.

18.  The CS drove and parked in front of 3420 28th Avenue. Agents observed the CS walk to the door of the residence and out of view. This CS relayed to agents she/he was met and greeted by a female, later identified as JEFFRIES, and was directed by JEFFRIES inside 3420 28th Avenue, to a backroom with a Christmas tree. The CS and JEFFRIES had a brief conversation in the backroom of the house. During their conversation, JEFFRIES directed the CS to a suitcase on the floor by the Christmas tree. The CS indicated to the suitcases and she/he asked if it was "52" referring to the amount of methamphetamine that had been negotiated with the UM for purchase. JEFFRIES indicated it was all there and asked the CS if the CS wanted more.

19.  In front of JEFFRIES, the CS opened the suit case and observed several plastic wrapped packages that the CS believed to contain methamphetamine. After looking at the methamphetamine, the CS indicated she/he would return shortly to complete the transaction leaving the methamphetamine in the suitcases near the Christmas tree. The CS and JEFFRIES walked to the front door of the residence and the CS returned to the CS vehicle. JEFFRIES was seen by agents at the door of the residence, but remained at the house.

20.  The meeting between JEFFRIES and the CS was recorded, upon review of this recording it was clear that three individuals were also in the same room as JEFFRIES and the CS when they met. These individuals were later identified as Alejandra MARROQUIN, Juan Pablo AISPURO Landeros, and Juan De Dios ARANGO Flores.

21.  The CS drove from the area as directed by and monitored by agents.

**Execution of a Search Warrant at 3420 28th Avenue, Sacramento, California**

22.  On December 9, 2019, the Honorable Magistrate Judge Allison Claire, Eastern District of California, signed a search warrant (2:19-SW-1111 AC) allowing agents to search 3420 28th Avenue, Sacramento, California.

23.  On December 11, 2019, the Investigating Agencies executed the above mentioned search warrant at 3420 28th Avenue. This search warrant was executed within 20 minutes of the above mentioned meeting between JEFFRIES and the CS.

24.  During a search of 3420 28th Avenue, agents located two suitcases in the backyard of the residence hidden behind a shed containing multiple clear packages of white crystal substance that I know through my training and experience to be methamphetamine. In total, these packages weighed approximately 58 pounds. These packages and their contents were similar to

5

methamphetamine seized on previous law enforcement operations at this residence. A photo of the packages is provided below.



25.     At the time of the execution of the search warrant, JEFFRIES was inside the residence, along with MARROQUIN, AISPURO, and ARANGO. In the backroom of the residence, agents located a Christmas tree and next to the tree were two telephones. These telephones were claimed by JEFFRIES and are described in **Attachment A-1** and **Attachment A-2**. MARROQUIN, AISPURO, and ARANGO were searched pursuant to the search warrant and the cellular telephone describer in **Attachment A-3** was found in MARROQUIN's pocket, the cellular telephone described in **Attachment A-4** was found in AISPURO's pocket, and the cellular telephone described in **Attachment A-5** was found in ARANGO's pocket. All for individuals identified that they live at 3420 28th Avenue.

26.     It should also be noted, the backroom of the residence with the Christmas tree had a sliding glass door leading to the fenced rear yard of the property and shed where the suitcases with the methamphetamine was located.

27.     The CS was shown a photo of JEFFRIES and confirmed JEFFRIES was the individual that had shown the CS the suitcase containing the methamphetamine packages while inside the residence. The CS indicated that JEFFRIES was the only person she/he dealt with while inside.

28.     Subsequent to the execution of the search warrant at 3420 28th Avenue, Sacramento, California the Investigating Agencies seized the cellular telephones described in **Attachment A-1** through **A-5,** as evidence. These cellular telephones have remained in the custody of the DEA since their seizure.

6

29.     On December 19, 2020, a federal grand jury returned a four-count indictment charged JERRIES and MARTINEZ with, *inter alia*, conspiracy to distribute and possession with intent to distribute methamphetamine. (2:19-CR-00233-TLN.)

## TRAINING AND EXPERIENCE REGARDING
## DRUG TRAFFICKERS AND CELLULAR TELEPHONES

30.     As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions. Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators. These records may be kept on paper or contained in memory calculators or computers. It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control. It is my training and experience that, in the case of drug dealers, evidence is likely to be found where the dealers live. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time. United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991).

31.     I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the

7

data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

32. In my own training and experience, and from what I have learned by consulting with other agents, narcotics traffickers use handheld devices like "smart" phones and mobile telephones to communicate with one another to facilitate their drug trafficking, either by voice or text message. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones. In addition, all of these functions are can be found on a "smart" phone or similar handheld device, as well as evidence of email communications. Because there is probable cause to believe that the above mentioned defendants were engaged in the trafficking of methamphetamine, I believe that there is probable cause to believe that the Devices seized incident to arrest were used to conduct drug trafficking business, and that information and records relating to these activities will be found stored in the cellular telephones.

33. Based on my training and experience as a DEA Special Agent, and upon the shared experience of other agents and officers with whom I have worked, I am aware that it is common practice for individuals involved in the trafficking of narcotics to rely on the use of telephones, and particularly cellular telephones to effectuate their scheme. I also know that it is common for those involved in narcotics trafficking to communicate with suppliers and distributors.

34. It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in **Attachment**

**B** are items most often associated with communications among drug traffickers during a conspiracy.

## TECHNICAL TERMS

35. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless Devices used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage Devices designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have

       the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d. GPS: A GPS navigation Devices uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e. PDA: A personal digital assistant, or PDA, is a handheld electronic Devices used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

36. Based on my training, experience, and research, I believe that the Devices may have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigational devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests

10

## **ATTACHMENT A-4**

*Item to be Searched*

A white and black iPhone bearing ID# 357331096100118, seized from Juan AISPURO Landeros at 3420 28th Avenue, Sacramento, California on December 11, 2019. The Device is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Items to be Seized*

This search warrant grants authority to seize all of the items set forth below:

1. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephones, including:
    a. Incoming call history;
    b. Outgoing call history;
    c. Missed call history;
    d. Outgoing text messages;
    e. Incoming text messages;
    f. Draft text messages;
    g. Telephone book;
    h. Data screen or file identifying the telephone number associated with the mobile telephone searched;
    i. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
    j. Voicemail;
    k. User-entered messages (such as to-do lists); and
    l. Stored media such as photographs or video.
2. Any passwords used to access the electronic data described above.
3. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions.
4. All information and records related to drug trafficking, including:
    a. Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;
    b. lists of customers and related identifying information;
    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording schedule or travel;

    f. all bank records, checks, credit card bills, account information, and other financial records.

    g. records of Internet Protocol addresses used;

    h. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:20-SW 0112-———KJN
)
A white and black iPhone bearing ID# 357331096100118 )
)
)

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____EASTERN_____ District of _____CALIFORNIA_____
*(identify the person or describe the property to be searched and give its location):*

See ATTACHMENT A-4

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____February 8, 2020_____
                                                                                                    *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.     ☑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge _any duty magistrate judge_____.
                                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                                                                 ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  _Jan 29, 2020  2:35 p.m._     _/s/ [signature]_____
                                                                                                    *Judge's signature*

City and state:  _Sacramento, California_____     _Hon. Kendall J. Newman, U.S. Magistrate Judge_
                                                                                                    *Printed name and title*

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

### Certification

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                                             *Executing officer's signature*

                                                                              *Printed name and title*

Subscribed, sworn to, and returned before me this date.

                                          *Signature of Judge*                         *Date*

## **ATTACHMENT A-4**

*Item to be Searched*

A white and black iPhone bearing ID# 357331096100118, seized from Juan AISPURO Landeros at 3420 28th Avenue, Sacramento, California on December 11, 2019. The Device is currently in the custody of the Drug Enforcement Administration.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Items to be Seized*

This search warrant grants authority to seize all of the items set forth below:

1. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with the mobile telephones, including:
    a. Incoming call history;
    b. Outgoing call history;
    c. Missed call history;
    d. Outgoing text messages;
    e. Incoming text messages;
    f. Draft text messages;
    g. Telephone book;
    h. Data screen or file identifying the telephone number associated with the mobile telephone searched;
    i. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
    j. Voicemail;
    k. User-entered messages (such as to-do lists); and
    l. Stored media such as photographs or video.
2. Any passwords used to access the electronic data described above.
3. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions.
4. All information and records related to drug trafficking, including:
    a. Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;
    b. lists of customers and related identifying information;
    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording schedule or travel;

    f. all bank records, checks, credit card bills, account information, and other financial records.

    g. records of Internet Protocol addresses used;

    h. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.